```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

MCDONALD MARCELLO, JEFFREY RIVERA, EDDY
MOMPLAISIR, AJUA TEMPLE, BRANDON
MCFADDEN,

                                Plaintiffs,

          - against -

DEPT. OF CORRECTIONS, CAPT. RAKESTRAW,       MEMORANDUM AND ORDER
shield # 118, CAPT. SANTIAGO, shield #
251, CAPT. GRIEVES, shield # 376, CAPT.      07 Civ. 9665 (NRB)
WASHINGTON, shield # 291, C.O. QUINONES,
shield # 1870, C.O. MILLINGTON, shield
17896, C.O. RODRIGUES, shield # 18007,
C.O. DELANCEY, shield # 10088, and three
environmental health staff workers, a
Mr. Brown and two jane does,
                                Defendants.

------------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs McDonald Marcello, Jeffrey Rivera, Eddy Momplaisir, Brandon McFadden and Ajua Temple bring this suit under 42 U.S.C. § 1983 against the New York Department of Correction ("DOC") and several of its employees, alleging that plaintiffs' constitutional rights were violated while they were in custody at the Anna M. Kross Center ("AMKC") on Rikers Island. Presently before the Court is a motion to dismiss filed by defendant DOC, arguing that: (1) plaintiff Marcello lacks standing to bring suit on behalf of other inmates; (2) DOC is not a suable entity; and (3) plaintiffs failed to exhaust

1

administrative remedies, and are therefore barred from raising these unexhausted claims in federal court under 42 U.S.C. 1997e. For the reasons set forth below, we grant defendant's motion and dismiss the complaint in its entirety.

## BACKGROUND[1]

On March 31, 2007, plaintiffs Marcello, Rivera, Momplaisir, Temple and McFadden, along with several other inmates housed in Quad 11 at the AMKC, were forced to clean up a blood spill in an adjoining cell, after another inmate mutilated himself with a razorblade. (Compl. Annex ¶¶ 1, 7-9.) The inmates were allegedly told that refusal to clean the cell would result in the confiscation of certain amenities, an extensive search of their cells, and other disciplinary actions. (Compl. Annex ¶ 9.) Plaintiffs claim that they did not receive the necessary training or cleaning equipment required to perform this task safely, and suggest that the inmate who had mutilated himself may have been HIV-positive, threatening the health and safety of the inmates assigned the task of cleaning up. (Compl. Annex ¶¶ 1, 11-14, 20-21.) In the course of performing the task,

---

[1] These facts are drawn from the Statement of Facts Annexed to plaintiff's complaint, and are assumed to be true for purposes of this motion. See Kalnit v. Eichler, 264 F.3d 131, 135 (2d Cir. 2001). Plaintiff's submission consists of the complaint itself ("Compl.") and several annexed documents, including a statement of facts ("Compl. Annex"), a summary of alleged constitutional violations and damage claims ("Compl. Summ."), and eight initial grievance forms filed by AMKC inmates, including grievances filed by four of the plaintiffs in this case ("Compl. Griev.").

2

Marcello and another inmate, Winston Harris, allegedly suffered asthma attacks induced by the chemical fumes from the cleaning agents, and both inmates were purportedly denied medical treatment by the prison guards. (Compl. Annex ¶¶ 16-18.)

Following the incident, grievance forms dated March 31, 2007, were filed in the names of plaintiffs Marcello, Momplaisir, Temple and McFadden. Similar grievance forms were also submitted by inmates Winston Harris, Gregory Fortune and Roke Flores, although none of these individuals are named as plaintiffs in the instant case. (There is no evidence that plaintiff Jeffrey Rivera submitted a grievance form during this period.) None of the eight grievance forms were signed.[2] The grievants all complained of their treatment during the cleanup operation, and requested that the "matter be investigated through the propper [sic] authorities." (Compl. Griev.)

The DOC Inmate Grievance Resolution Program ("IGRP") consists of five levels of review for inmate grievances. After an inmate has submitted his grievance form, the Inmate Grievance Resolution Committee ("IGRC") has five days in which to resolve the issue informally. If the IGRC is unable to reach a resolution, or if the grievant does not consent to the resolution proposed by the IGRC, then the inmate may request a

---

[2] Furthermore, while some of the inmates appear to have filled out the "Name" and "I.D.#" fields on their grievance forms individually, the phrasing and handwriting of the substantive allegations on all eight forms strongly suggests that they were completed by a single inmate.

formal hearing in front of the Committee to present his complaint and call supporting witnesses. The IGRC must then issue a written decision addressing the validity of the inmate's grievance. If the inmate remains unsatisfied with the decision of the Committee, he may appeal the decision to the commanding officer of the facility, then to the Central Office Review Committee (CORC), and finally to the New York City Board of Correction. City of New York Dept. of Correction Directive 3375R-A ("DOC Directive") § IV(1)-(4). A prisoner's remedies are not deemed "exhausted" until he has proceeded through all levels of the IGRP. See Varela v. Demmon, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); Piper v. City of New York, No. 02 Civ. 1708 (WHP), 2004 U.S. Dist. LEXIS 29214, at *6-*7 (S.D.N.Y. Mar. 17, 2004); Orta v. City of New York Dept. of Correction, No. 01 Civ. 10997 (AKH), 2003 WL 548856, at *2 (S.D.N.Y. Feb. 25, 2003).

In the instant case, it appears that plaintiffs abandoned the prescribed grievance procedures after their initial grievance forms failed to produce any results. Instead of requesting a formal hearing or appealing to senior prison officials as required by the IGRP, on October 31, 2007, they filed this complaint against DOC and several of its employees in this Court. (See Compl. 4.) Plaintiffs Marcello, McFadden, Rivera and Momplaisir all signed the complaint and provided their inmate identification numbers, while plaintiff Temple did

4

not. The complaint alleges that the conditions under which the plaintiffs were forced to clean up the blood spill constituted cruel and unusual punishment in violation of the Eighth Amendment, (Compl. Summ. ¶ 1.); that the disciplinary action threatened by the prison guards violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures; and that plaintiffs were not afforded due process as guaranteed by the Fourteenth Amendment. (Compl. Summ. ¶ 4.)

**DISCUSSION**

I.  **Standard of Review**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court accepts as true all factual allegations included in the complaint, and makes all reasonable inferences in the plaintiffs' favor. See Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007). A court should be particularly lenient when construing claims filed by pro se litigants alleging civil rights violations. See, e.g., Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002)(quoting Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998)). A complaint "should not be dismissed [for failure to state a claim upon which relief can be granted] . . . unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II. The Exhaustion Requirement**

The Prison Litigation Reform Act of 1996 ("PLRA") requires that before a prisoner brings a suit for civil rights violations in federal court under 42 U.S.C. § 1983, "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the statute covers all claims related to living conditions, the behavior of prison staff, or any other abuses that might occur in prison, and applies regardless of the remedies sought by the inmate in a civil suit. See Porter v. Nussle, 534 U.S. 516, 526-28, 532 (2002); Booth v. Churner, 532 U.S. 731, 740-41 (2001). The purpose of these requirements is to:

> [A]fford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter, 534 U.S. at 524-25 (internal citations and quotation marks omitted); see also Jones v. Bock, 127 S.Ct. 910, 914-15, 549 U.S. 199 (2007).

### III. Analysis

#### A. Exhaustion of Administrative Remedies

While plaintiffs Marcello, McFadden, Temple and Momplaisir all filed initial grievance forms in accordance with DOC regulations,[3] they failed to request any formal hearings before the IGRC after receiving no official response to their grievances from prison administrators. (Compl. 4.) Nor did plaintiffs appeal to the warden of the facility, the Central Office Review Committee (CORC), or the New York City Board of Correction, as required by DOC regulations. DOC Directive § IV(2)-(4). Bearing in mind that inmates are required to proceed through all five levels of the IGRP review process before their claims are considered "exhausted," and that plaintiffs in the case at bar failed to exhaust their claims fully, they are thus procedurally barred from bringing suit in federal court under 42 U.S.C. § 1997e. See, e.g., Varela, 491 F. Supp. 2d at 447;

---

[3] Plaintiff Rivera apparently failed to file an initial grievance form, and therefore his claims against DOC and its employees are clearly unexhausted and procedurally barred from federal court.

7

Piper, 2004 U.S. Dist. LEXIS 29214, at *6-*7; Orta, 2003 WL 548856, at *2.[4]

Plaintiffs may overcome the exhaustion requirement only if they are able to show either (1) that administrative remedies were not actually "available" to them; (2) that defendant should be estopped from raising plaintiffs' failure to exhaust as an affirmative defense; or (3) that special circumstances exist that excuse plaintiffs' non-compliance with official procedural requirements. Giano v. Coord, 380 F.3d 670, 677 (2d Cir. 2004); see also, Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007); Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)("defendants' own actions inhibiting the inmate's exhaustion of remedies may estop . . . defendants from raising the plaintiff's failure to exhaust as a defense")(citations omitted).

Plaintiffs have not alleged that prison officials actively prevented inmates from pursuing their grievances in a timely or proper manner. Nor have plaintiffs disclosed any "special circumstances" that would justify their failure to exhaust the administrative remedies available to them. The only question,

---

[4] Additionally, inmate Ajua Temple did not sign the complaint, and therefore is not a party to this case. Pro se prisoners cannot bring suit to vindicate the rights of absent parties, and therefore any claims arising out injuries allegedly suffered by Temple are dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. See Mitchell v. Cuomo, 748 F.2d 804, 810 (2d Cir. 1984).

therefore, is whether the remedies proscribed by the IGRP were actually "available" to plaintiffs.

Although a number of federal circuit courts have held that when a grievant files a complaint and receives no response from prison authorities within the time limits established by the grievance procedures, the remedies associated with those procedures may be considered "unavailable" for purposes of exhaustion,[5] New York City DOC regulations explicitly place the burden of requesting a formal hearing on the grievant. DOC Directive 3375R-A provides that:

> [i]f no informal resolution is reached within . . . five (5) days [of filing the grievance] . . . the inmate has five (5) days from notification of disposition to request a hearing. <u>If the inmate has not received any response within the same five (5) day period, the inmate should go to the Grievance Office . . . and indicate . . . that a hearing is requested</u>.

DOC Directive § IV(B)(1)(d) (emphasis added).[6] Therefore, plaintiffs should have requested formal hearings from the Grievance Office when they received no response to their initial

---

[5] See Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)("available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). These decisions have received favorable treatment from the Second Circuit, but the Circuit has not directly addressed this specific issue. See Giano, 380 F.3d at 677; Hemphill, 380 F.3d at 687 n.6.

[6] We note that state DOC regulations contain no such requirement. Indeed, state regulations suggest that in such a situation the burden of scheduling a formal hearing is on prison administrators. See N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.5(n).

grievance forms. Their failure to do so contravened DOC procedures, and bars this action. See, e.g., Hernandez v. Coffey, No. 99 Civ. 11615 (WHP), 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003)("where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC"); Saunders v. Goord, No. 98 Civ. 8501 (JGK), 2002 U.S. Dist. LEXIS 13772, at *9-*10 (S.D.N.Y. July 25, 2002)("if the plaintiff did not receive responses directed toward some grievances, the plaintiff was required, at minimum, to make reasonable attempts to appeal those grievances before bringing an action in federal court").

Thus, administrative remedies were still "available" to plaintiffs within DOC at the time that plaintiffs filed their complaint with this Court. Because they did not pursue those remedies, their claims are unexhausted under 42 U.S.C. § 1997e.[7]

### B. DOC is not a Suable Entity

Further, for the sake of completeness, we note that under the New York City charter, agencies of the City are immune from

---

[7] We also note that in their initial grievances to the IGRC, plaintiffs only grieved their Eighth Amendment claims, and failed to allege any violations of their Fourth and Fourteenth Amendment rights. (Compl. Griev.) Prison officials were therefore given no opportunity to resolve these allegations internally, as is required under the PLRA. See Jones, 127 S.Ct. at 914. Thus, even if plaintiffs had properly exhausted the Eighth Amendment claims raised in their initial grievances, their claims arising under the Fourth and Fourteenth Amendments would remain ungrieved and unexhausted.

suit: "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396 (2004); see also East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992)(holding that the New York City Police Department was a nonsuable entity); Echevarria v. Dept. of Correctional Servs., 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999)(holding that DOC was a nonsuable entity). Thus, plaintiffs cannot sustain a suit against DOC, and we dismiss all claims against DOC pursuant to Fed R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the complaint is dismissed on the ground that plaintiffs failed to exhaust available administrative remedies. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

Dated:   New York, New York
         July 30, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

11

Copies of the foregoing Order have been mailed on this date to the following:

McDonald Marcello
Jeffrey Rivera
Eddy Momplaisir
Ajua Temple
Brandon McFadden
c/o McDonald Marcello
#895-07-00351
Anna M. Kross Center
18-18 Hazen Street
East Elmhurst, NY 11370

Michael Suarez, Esq.
Office of the Corporation Counsel
City of New York
Law Department
100 Church Street
New York, NY 10007